**In re S. Simpson GRAY, t/a National Law Clinic of Philadelphia and d/b/a Law Clinic of S. Simpson Gray, Debtor.**

**TRI CONTINENTAL LEASING CORPORATION, Plaintiff,**

**v.**

**S. Simpson GRAY t/a National Law Clinic of Philadelphia and d/b/a Law Clinic of S. Simpson Gray, Defendant.**

Bankruptcy No. 80 B 20352.
Adv. No. 82 ADV 6081.

United States Bankruptcy Court,
S.D. New York.

March 23, 1983.

Jeffrey L. Sapir, Yonkers, N.Y., Trustee.

S. Simpson Gray, Mount Vernon, N.Y., for debtor.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

This Chapter 13 debtor seeks to have the sum of $1146.16 refunded to him by the standing Chapter 13 trustee on the ground that this sum was intended for payment to a secured creditor who did not file a proof of claim in this case. Therefore, the debtor reasons that the funds should be returned to him rather than distributed to unsecured creditors. However, the standing Chapter 13 trustee maintains that the funds should be allocated for a pro rata distribution to the unsecured creditors whose claims were allowed.

The debtor is a practicing attorney and a member of the firm of Law Clinics of Mott & Gray, P.C. He filed his Chapter 13 peti-

tion with this court on August 11, 1980, under the caption of "S. Simpson Gray, t/a National Law Clinic of Philadelphia and d/b/a Law Clinic of S. Simpson Gray." The debtor's Chapter 13 plan was confirmed on December 29, 1980. Prior to confirmation, the debtor's plan had been amended various times. The plan was also amended after confirmation on March 18, 1982. This last version provides that the debtor submits to the supervision and control of the trustee the sum of $431.17 per month for 60 months for distribution to priority claims, unsecured claims and to specific secured claims in stated amounts. One of the secured creditors, Summit Leasing Company, was listed for distribution at the rate of $95.00 per month. This creditor assigned its interest in the collateral to Tri-Continental Leasing Corporation who has since obtained relief from the automatic stay imposed under Code § 362 and was authorized to reclaim the collateral.

The trustee received various payments from the debtor towards his plan in the total sum of $7293.51. From this fund the trustee paid $3600.00 towards the only secured claim that was filed in this case. The trustee also paid a priority tax claim filed by the Internal Revenue Service in the amount of $1988.50. Administration expenses total $558.75. Thus, having received $7293.51, and having paid $6147.35 for secured claims, administration expenses and priority claims, there remains available for distribution to the unsecured claims the sum of $1146.16. However, the debtor argues that his payments to the trustee included $95.00 per month for twenty-five months, or $2375, that should be attributable to the secured claim of Summit Leasing Company and its assignee Tri-Continental Leasing Corporation. The debtor contends that since neither Summit nor Tri-Continental filed a proof of claim, he is entitled to a refund of $2375.00 and that no part of the $1146.16 balance on hand with the trustee should be paid to any of the debtor's unsecured creditors.

## DISCUSSION

Code § 1322(a)(1) states that a Chapter 13 debtor's plan must provide "for the sub-

mission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan". Additionally, Subsection (b) of Code § 1326 clearly directs the Chapter 13 trustee to make payments to the creditors under the plan, except as otherwise provided in the plan.

The debtor's Chapter 13 plan requires the debtor to commit the sum of $431.17 per month for payment to his creditors. The debtor ascribed specific amounts which should be allocated to certain secured claim holders that were named in his plan. There is nothing in the plan which states that if a named creditor fails to file a proof of claim the amount that would have been paid to such creditor should inure to the benefit of the debtor rather than his other creditors. Indeed, such a provision would conflict with the requirement under Code § 1322(a)(1) that the debtor's earnings should be committed to the funding of his plan for payment to his creditors.

The debtor's request for a return of the balance on hand after the trustee's payments towards secured and priority claims and expenditures to cover administration expenses is without merit. The debtor is bound by his confirmed plan to pay $431.17 per month to the Chapter 13 trustee for distribution to the allowed claims in this case. In the event that any creditor's claim is disallowed or never filed, such creditor simply does not partake in the distribution, with the result that the pro rata share of each creditor to whom a specific amount is not ascribed, will be increased.

The debtor's unsecured creditors have received nothing under the plan to date. Manifestly, their right to a payment from the funds paid by the debtor to the trustee pursuant to the confirmed Chapter 13 plan has greater weight than the debtor's application for a refund.

## CONCLUSIONS OF LAW

1. The unsecured claim holders are entitled to receive a distribution from the funds

required to be paid by the debtor to the Chapter 13 trustee pursuant to his confirmed plan.

2. There is nothing in the plan which states that if a named secured claim holder fails to file a proof of claim, or if any filed proof of claim is disallowed, any funds that would have been paid to such claim holder should be refunded to the debtor, nor is there any basis for the inclusion of such a provision in the plan.

3. The debtor's motion for reargument is granted. On reargument, it is concluded that the debtor's request for a refund from the Chapter 13 trustee with respect to the $1146.16 in question is devoid of merit and is denied.

SUBMIT ORDER ON NOTICE.